Commonwealth *v.* Phillips, Appellant.

Argued March 14, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Harry L. McNeal, Jr.,* for appellant.

*John T. Miller,* First Assistant District Attorney, with him *John F. Rauhauser, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., June 17, 1966:

On August 2, 1965 appellant, Kenneth Phillips, was granted a writ of habeas corpus by the Court of Common Pleas of York County. The basis for issuing the writ was the fact that he was unrepresented by counsel and did not intelligently waive counsel at the time of a 1955 guilty plea and sentencing on three bills of indictment for robbery, burglary and prison breach. The court directed that the defendant stand trial on the three indictments.

On August 13, 1965 appellant filed a motion to dismiss the 1955 bills of indictment on the ground that they had never been approved by a grand jury and that the prosecutions were therefore barred by the statute of limitations. The Commonwealth answered that the appellant had waived indictment by the grand jury. The lower court refused the motion to dismiss.

On December 20, 1965 appellant, represented by counsel, was tried before Judge SHADLE without a jury pursuant to agreement. At the trial appellant stipulated the nature and content of the testimony of the prosecution witnesses and offered no defense testimony. Phillips was found guilty and appeals from the judgment of sentence.

### I.

Appellant's first argument is that he did not knowingly and intelligently waive grand jury indictment. On July 14, 1955 appellant, without counsel, signed the following form captioned, "Notice to District Attorney of Plea of Guilty":

"I hereby acknowledge and admit that I am guilty of the charge above set forth, and as described in the information in this case, and I do hereby enter my plea of guilty to said charge. I, therefore, request that no bill of indictment charging me with the above offense shall be sent to the Grand Jury, but that you prepare a bill of indictment in the usual form and enter my plea of guilty thereon for the purpose of having the proper Court forthwith impose sentence upon me for the offense therein set forth, under the provisions of the Act of April 15th, 1907, P. L. 62, as amended."

On July 18, 1955, again without counsel and not in open court, appellant signed the following waiver form, stamped on the back of each of the three bills of indictment:

"The Defendant(s) within named, after being advised of my (our) constitutional right to be represented by counsel, voluntarily waive the right to counsel and also waive the finding of a True Bill by the Grand Inquest and enter my (our) plea of 'guilty' to the within charge. The said plea of 'guilty' to have the same force and effect as if the same were entered in open court upon a Bill of Indictment regularly filed by the Grand Inquest."

These forms were prepared and signed pursuant to the Act of April 15, 1907, P. L. 62, §1, as amended, 19 P.S. §241.[1]

Our starting point in resolving this issue is Article I, Section 10 of the Pennsylvania Constitution which provides:

"No person shall, for any indictable offense, be proceeded against criminally by information, except in

---

[1] This act was suspended, effective January 1, 1965, by Rule 215 of the new Pennsylvania Rules of Criminal Procedure, requiring that when a defendant is not represented by counsel, the waiver shall take place in open court at any time before a defendant makes his plea.

cases arising in the land or naval forces, or in the militia, when in actual service, in time of war or public danger, or by leave of court for oppression or misdemeanor in office."

The fact that in Pennsylvania this is a constitutional guarantee does not mean that it cannot be waived, so long as the waiver is knowingly and intelligently made. *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019, 82 L. ed. 1461 (1938) ; *Commonwealth ex rel. McCray v. Rundle*, 415 Pa. 65, 202 A. 2d 303 (1964). "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst*, supra at 464. In determining whether a waiver of a constitutional right is intelligently made, the court must consider the particular facts and circumstances of each case, including the background, experience and conduct of the accused. *Id.*

Although we have recently held in *Commonwealth ex rel. Ross v. Botula*, 206 Pa. Superior Ct. 1, 211 A. 2d 42 (1965), that a signed written statement, in which a defendant pleads guilty, waives presentment of the indictment to the grand jury, waives appointment of counsel and consents to the pronouncement of sentence, cannot alone establish an understanding and intelligent waiver *of the right to counsel,* we have more than a signed written statement in this case. The record of the habeas corpus hearing on July 23, 1965 reveals the following questioning of the appellant:

"Q. You did intend to waive the presentment of this bill to the grand jury then?

"A. Yes.

"Q. And you would not now contest that you didn't want to waive that right?

"A. No, sir.

"Q. Then look at the writing on this bill of indictment, which is the 199 bill. Do you see the same language on this bill of indictment?

"A. Yes, sir.

"Q. And in that case did you also intend at that time to waive the finding of the grand jury?

"A. Yes.

. . .

"Q. But you did, however, intend to waive the finding of the grand jury?

"A. Yes, sir.

"Q. *And you understood what the grand jury would do, just pass on the bill and find it true or untrue?*

"A. *Yes, I understood that.* (Emphasis added)

. . .

"Q. I ask you to look at bill 198, which is the burglary charge, stealing one Ford sedan. I show you the same language on the back of that indictment and I ask you whether it is the same as the other?

"A. Yes, it is.

"Q. And when you signed that did you intend to waive your right to the grand jury?

"A. Yes, sir.

This clear affirmative response, four times repeated by appellant, satisfies us, as it satisfied the lower court, that this appellant sufficiently understood the essential function of the grand jury and knowingly and intelligently waived this step in the criminal procedure. His statements in his deposition, taken on October 6, 1965, after he had won a new trial on his habeas corpus petition and then had filed a motion to dismiss the 1955 bills of indictment, are unconvincing.[2] We will not

---

[2] In the deposition appellant caused to be taken, he testified that he thought he was just waiving a preliminary hearing and entering a plea of guilty when he signed the written waiver. He said he had made a mistake in testifying at his habeas corpus hearing (in July) that he knew what the grand jury did. He also said that he now (in October) understood the meaning of the grand jury and "I won't waive it now."

rely on these self-serving declarations, which contradict appellant's own prior testimony, to render the waiver ineffective.

## II.

Appellant next urges that the waiver of indictment is a "critical stage" in the criminal proceedings and that lack of counsel at this stage of itself renders the waiver invalid. The Supreme Court of the United States has made it clear that an accused has the right to the assistance of counsel at any "critical stage" of a criminal proceeding. *Hamilton v. Alabama,* 368 U.S. 52, 82 S. Ct. 157, 7 L. ed. 2d 114 (1961); *White v. Maryland,* 373 U.S. 59, 83 S. Ct. 1050, 10 L. ed. 2d 193 (1963). In deciding whether the waiver of indictment constitutes a "critical stage", we look to those cases which have decided that certain stages in the criminal proceedings are "critical", requiring the guiding hand of counsel.

In *Hamilton,* the court held that under Alabama law arraignment is a critical stage because at this stage (1) insanity must be pleaded and (2) pleas in abatement and motions to quash based on systematic exclusion of one race from grand juries or on the ground that the grand jury was otherwise improperly drawn must be made. In *White,* the court held that although arraignment may not be a critical stage in a state criminal proceeding, it was critical when a guilty plea entered by an uncounseled defendant at a Maryland preliminary hearing was introduced in evidence at his trial after he had changed his plea to not guilty. In *Pointer v. Texas,* 380 U.S. 400, 85 S. Ct. 1065, 13 L. ed. 2d 923 (1965), the Supreme Court explicitly reserved decision on whether a preliminary hearing under Texas law, where the judge does not accept pleas of guilty or not guilty but decides only whether the accused shall be bound over to grand jury and, if so,

whether he should be admitted to bail, is a critical stage.

Pennsylvania's Supreme Court has decided that the following are critical stages in Pennsylvania criminal proceedings: a hearing on a guilty plea, *Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 204 A. 2d 439 (1964); sentencing, *Commonwealth ex rel. Remeriez v. Maroney,* 415 Pa. 534, 204 A. 2d 450 (1964); argument of a direct appeal, *Commonwealth v. Sliva,* 415 Pa. 537, 204 A. 2d 455 (1964). However, the Pennsylvania Supreme Court has held that the preliminary hearing is not a critical stage, absent unusual circumstances. *Commonwealth ex rel. Butler v. Rundle,* 416 Pa. 321, 206 A. 2d 283 (1965).

Running through these decisions is the concept that where rights may be preserved or lost in the criminal proceedings, a critical stage has been reached and the right to the assistance of counsel attaches. In *Hamilton v. Alabama,* supra, the court pointed out that at an Alabama arraignment, "Available defenses may be . . . irretrievably lost, if not then and there asserted." In *Commonwealth ex rel. O'Lock v. Rundle,* supra, the court said, at p. 521:

"We find no difficulty in characterizing a hearing on a guilty plea as a critical stage in the proceedings against the accused. Surely, such a hearing is a stage where rights may be preserved or lost. It is, in our view, as critical a stage for the accused as any he faces in the criminal proceedings against him. In most instances, it may be the last crucial step in the proceedings, the procedural moment when nearly all significant rights are adjudicated, save those available to the accused on appeal or through collateral attack.

"The hearing involves procedures and techniques with which only legal counsel will be familiar. It often may be a technical and intricate affair, and unrepresented laymen may not be expected to either fully grasp

the intricacies of the proceedings or be aware of possible defenses. Nor may it be assumed that, in the absence of counsel, the accused is in a position to effectively present evidence and other considerations in mitigation of sentence. Only with the assistance of counsel may the accused be expected to know the defenses and other privileges available to him."

In *Commonwealth ex rel. Remeriez v. Maroney,* supra, the court said, at p. 536: "It is evident from the record that for this petitioner the hearing at which sentence was imposed was, in reality, the final opportunity for presenting and urging matters and circumstances which, in the discretion of the trial court, may have determined the freedom or imprisonment of the accused."

Thus, in all these situations, when, by his response or lack of it, a defendant can finally give up a right or defense which a lawyer might have advised him of or asserted, he is entitled to the assistance of counsel at that stage. But when no legal right is lost and no factual or legal disadvantage is suffered, as at the usual preliminary hearing, the stage is not a critical one and the assistance of counsel is not constitutionally mandated. We are of the opinion that a waiver of indictment by a grand jury in Pennsylvania is not a critical stage.

An indictment is "a final accusation by the grand jury charging a person with the commission of a crime, and such charge, in itself, is no indication of an accused's guilt." *Commonwealth v. Smihal,* 182 Pa. Superior Ct. 232, 237, 126 A. 2d 523 (1956). It is ex parte and not adversary in nature. Only the Commonwealth appears. A defendant cannot be present, cannot offer or object to evidence, and cannot confront or cross-examine witnesses. Likewise, there is nothing that counsel can do. There are no procedures, techniques, intricacies, defenses, or privileges which a law-

yer could explain. A lawyer's objections to evidence and the effective presentation of defense evidence have no place in the grand jury room. In short, there is nothing that the defendant, or his counsel, if he had one, could do that could possibly influence the grand jurors as they deliberate in their historic role of protecting individuals from arbitrary and overzealous prosecutions in cases lacking sufficient foundation. The defendant is entitled to sit back and wait. The fact that this appellant was not content to sit back but chose to speed the disposition of his case by waiving indictment does not render critical a stage where he or his lawyer or both must be passive bystanders. Since no legal rights are lost, no factual disadvantages are suffered, and the determination of his guilt or innocence is unaffected, the considerations impelling the finding of criticalness at other stages of the proceeding are not present at the waiver of indictment.[3]

Appellant cites these results of a waiver of indictment which he contends are so significant as to constitute this a "critical stage" in the proceeding: "he suffered the disadvantage of being placed in jeopardy, to wit, having to post bail or remain in jail and then face the dilemma of standing trial or pleading guilty, he tolled or waived the Statute of Limitations, and lost the right to know the names of the grand jury witnesses."

The first "disadvantage", that of posting bail or remaining in jail, is faced by every person accused of crime once that person is held for grand jury action and indictment does not materially change his position in this regard. Appellant had no *right* to remain free of this kind of "jeopardy" just as he had no *right* to

---

[3] *Bartlett v. United States*, 354 F. 2d 745 (8th Cir. 1966), the only appellate decision on this subject which our research uncovered, contains dictum which is in accord with our holding.

have the statute of limitations expire.[4] The "disadvantage", if any, arose from the appellant's desire to take advantage of his constitutional right to a speedy trial. The possibility that the grand jury would have ignored the bill of indictment, which possibility appellant could not have influenced in the slightest, is not a *right* which is lost any more than the "right" to remain unarrested is given up when a suspect voluntarily turns himself in to the police. As a practical matter (and we should not lose sight of practicalities in our appellate function), it is inconceivable that any person accused of a crime would waive indictment if he thought that the Commonwealth didn't have enough evidence to show even probable grounds for the accusation.

The last right is misconstrued by appellant. It is true that his right to know who his accusers are requires that the names of those who testify before the grand jury be endorsed on the indictment. *Commonwealth v. Brownmiller,* 137 Pa. Superior Ct. 261, 9 A. 2d 155 (1939). But a bill of indictment need not list all witnesses necessary to make out a case for conviction, *Commonwealth v. Emmel,* 194 Pa. Superior Ct. 441, 168 A. 2d 609 (1961); and the Commonwealth need not call all the witnesses so listed. *Commonwealth v. Gockley,* 411 Pa. 437, 192 A. 2d 693 (1963). The name of the prosecutor appeared on each indictment this appellant signed and he could have confronted all the other witnesses at trial. This argument is particularly hollow-sounding in this case where appellant, when given a new trial and represented by counsel, chose not to confront his accusers then but by agreement with the District Attorney stipulated as to what their testimony would be and then presented no defense testimony.

---

[4] Appellant waived indictment 40 days after the offenses were committed.

Appellant's contention that the waiver of indictment had no significance independent of the guilty plea, which was set aside, is unpersuasive. This appellant, by his own testimony, indicated that he understood what the grand jury did and that he was waiving action by the grand jury. His entry of a guilty plea, rather than a plea of not guilty, was a second and final step. The fact that later it is decided that the Constitution requires the guiding hand of counsel or an intelligent waiver thereof at the time a guilty plea is entered does not nullify a knowing and intelligent waiver of a procedural step at which step the hand of counsel could do nothing by way of guidance.

Judgment affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

I disapprove of the conclusion of the majority that the waiver of the constitutional right to presentment of a bill before a grand jury is not a critical stage in criminal prosecutions which requires the presence and assistance of counsel.