J-S35025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEVIN MANN | |
| Appellant | No. 805 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 3, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0003221-2011

BEFORE:  BOWES, J., STABILE, J., and COLINS, J.*

MEMORANDUM BY STABILE, J.:                **FILED OCTOBER 07, 2020**

Appellant Kevin Mann appeals from the January 3, 2013 judgment of sentence entered in the Court of Common Pleas of Philadelphia County ("trial court"), following the *nunc pro tunc* reinstatement of his direct appeal rights. Upon review, we affirm.

The facts and procedural history of this case are undisputed.  As summarized by the trial court:

> Appellant was charged, *inter alia*, with attempted robbery of a motor vehicle, graded as a felony of the first degree and attempted theft of a motor vehicle, graded as a felony of the third degree.  These charges arose out of an incident that occurred on February 26, 2011, during which Appellant accosted Mr. and Mrs. Charles Campbell while taking their automobile.  Appellant appeared before [the trial court] on August 20, 2012 for a waiver trial[.].  [The trial court rendered the following findings:]

---

* Retired Senior Judge assigned to the Superior Court.

On February 26, 2011, at about 6:00 p.m., Mr. Charles Campbell was driving up an alley behind his home in Philadelphia returning to his residence located near 5th and Nedro Streets in Philadelphia with his wife following a shopping trip when he saw a male, later identified as Appellant proceeding onto 5th Street from Nedro Street. Mr. Campbell hit the remote to open his garage door at which time Appellant said something "crazy" to Mr. Campbell that he could not decipher. Mr. Campbell ignored Appellant and began to carry what he had purchased into his residence.

Once inside, Mr. Campbell became concerned about Appellant so he went back outside. He observed that Appellant appeared to be under the influence of some substance. [Mr. Campbell indicated that Appellant's eyes were bulging and he was bleeding from a cut over his left eye.] Appellant then began ranting. Mr. Campbell explained as follows what happened next:

> He's like, "Man, they did, man, they did." And he was just talking out the side of his -- out the side of his head. So I'm, like, "Yo, man." I begged and pleaded with him, "Why don't you go lay down? Go upstairs. Go in your house somewhere and fall back." I said, "You ain't doing too good right now." "No man, no man. Here, I want you to look at this," and he had some type of -- like a Visa card, and another type of business card he had. I said, "What's this?" "I need to use your phone." I said, "My phone?" I said, "I ain't got a phone, man." "I need to use your phone. I got to call someone. I got to call someone and they got to come help us, man. They did, they just shot him and killed him." I said, "Who are you talking about, man?" I said, "Look, man, why don't you go upstairs. Go to your house and go fall back, man." I said, "You're high, man." I said, "Go fall back." "No, no, no."

N.T. 8/20/12, 14-15.

After this exchange, Appellant pushed Mr. Campbell and walked to the passenger side of the car where he entered the vehicle and began to climb over Mr. Campbell's wife, who was still inside it, while saying that he needed the keys to the car. Mr. Campbell grabbed Appellant, who elbowed Mr. Campbell's wife a couple of times, to pull him out of the car while simultaneously telling him to Appellant to stop what he was doing. Appellant then

- 2 -

got into the driver's seat and tried to drive away but could not because Mr. Campbell had the keys to the vehicle. [According to Mr. Campbell, Appellant began manipulating the window wiper lever because he believed that it was the gear shift which was located in the center console of the car.] Mr. Campbell then retrieved a shovel from the side of his garage and struck Appellant three times with it. Appellant exited the car after being struck and walked to a nearby residence where he apparently was staying. [Mr. Campbell had never seen Appellant before and did not know he was staying nearby.]

Appellant returned a very short time later and again climbed inside Mr. Campbell's car. Mr. Campbell told Appellant to go home and also directed his wife to call 911. Appellant, however, ignored him for a period of time and again tried to drive the car away while saying that he needed the car.

Appellant eventually did exit the vehicle after which he walked into Mr. Campbell's garage toward Mr. Campbell's wife who was inside it. When Appellant did so, Mr. Campbell began struggling with Appellant and then struck Appellant with a pick axe. Upon being struck, Appellant stumbled around the car and collapsed in front of it. The police arrived shortly thereafter and placed Appellant in custody.

Renee Campbell, Mr. Campbell's wife, testified that as her husband was unloading what they had purchased she remained inside the car. While inside it, Appellant walked over to her side of the car and began climbing over her and struck her a couple of times with his elbow as he tried to get inside the vehicle. Her husband pulled Appellant out of the car but he then ran around to its driver's side and got into the driver's seat.

Once in the driver's seat Appellant began asking where the keys to the car were as he tried to drive away. Mrs. Campbell's husband managed to get Appellant out of the car and Appellant walked to where he was staying. He, however, walked back to where Mrs. Campbell and her husband were and charged at Mrs. Campbell, who thought that he wanted to harm her. Appellant then got back into the car and again began searching for its keys before he got out of it and entered the garage. Ms. Campbell then went inside and called 911. After phoning the police she went back outside and saw that Appellant was sitting in front of the car and the police had arrived. She testified that she did not give Appellant permission to operate her vehicle.

Philadelphia Police Officer Robert Blake went to the scene of the incident pursuant to a radio call and upon arrival he observed Mr. Campbell pacing in the driveway of his residence. The officer placed Mr. Campbell in the officer's patrol car because Mr. Campbell was very distraught and was acting erratically. The officer then spoke to Mrs. Campbell who advised him about what had occurred and explained that a male had tried to pull her out of a car in order to steal it. Officer Blake then spoke to Mr. Campbell, who had calmed down. Based on what he and his wife had related, the officer placed Appellant under arrest.

[Following the trial, the court found Appellant guilty of the above offenses. On January 3, 2013, the court imposed a mandatory minimum sentence of ten to twenty years' incarceration pursuant to 42 Pa.C.S. § 9714 on Appellant on the attempted robbery of a motor vehicle conviction and entered a verdict without further penalty on the attempted theft conviction. Following the imposition of sentence by the court, Appellant did not file a post-sentence motion or a direct appeal. On December 19, 2013, Appellant filed a petition under the Post-Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq*. Counsel was appointed to represent him and following the filing of an amended petition, th[e PCRA c]ourt issued an order permitting Appellant to file a notice of appeal from the judgment of sentence *nunc pro tunc*. Appellant thereafter filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.]

Trial Court Opinion, 6/24/19, at 1-5.

On appeal, Appellant presents a single issue for our review.

[I.] Should Appellant's judgment of sentence be vacated because Appellant's indictment and associated Bills of Information were defective and, thus, the indictment should be quashed because Counts 1 and 2 did not reference the specific statute under which Appellant was charged and Count 1 did not, in particular, properly define Robbery as requiring the use or threat of force?

Appellant's Brief at 4.

Here, based upon our review of the record, we are constrained to agree

with the Commonwealth's position that Appellant has waived his issue on

- 4 -

appeal because he failed to raise it pretrial. *See* Commonwealth's Brief at 7. Rule 578 of the Pennsylvania Rule of Criminal Procedure provides that "[u]nless otherwise required in the interests of justice, *all pretrial* requests for relief shall be included in one omnibus motion." Pa.R.Crim.P. 578 (emphasis added). The Comment accompanying Rule 578 specifically provides that "[t]ypes of relief appropriate for the omnibus pretrial motions include the following requests: . . . (5) to quash or dismiss an information." *Id.* cmt.

Indeed, as Rule 578 illustrates, defects in the bill of information shall be raised pretrial and cannot be raised for the first time on appeal. *See Commonwealth v. Cruz*, 512 A.2d 1270, 1272 (Pa. Super. 1986) ("A failure to state a ground for attacking the information in a pre-trial motion to quash results in a waiver of that ground."), *appeal denied*, 522 A.2d 49 (Pa. 1987); *see also Commonwealth v. Martin*, 694 A.2d 343, 344 (Pa. Super. 1997) ("A request to quash an information must be made in an omnibus pretrial motion for relief or it is considered waived.").

Here, as the record reveals, Appellant did not challenge the bill of information pretrial. Appellant now raises this issue for the first time on appeal. He cannot do so. *See* Pa.R.Crim.P. 578; *see also Cruz*, *supra*; *Martin*, *supra*; Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal); *see also* Pa.R.A.P. 1925(b)(4)(vii) ("[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *Commonwealth v. Melendez-*

*Rodriguez*, 856 A.2d 1278, 1288 (Pa. Super. 2004) (*en banc*) (holding issues raised for first time in 1925(b) statement waived); *accord Commonwealth. v. Tejada*, 107 A.3d 788, 790 (Pa. Super. 2015). Accordingly, Appellant's challenge to the bill of information is waived.

Judgment of sentence affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 10/7/2020*